UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---------------------------------------------------------------X

| | |
|---|---|
| NORA VARGAS, | **COMPLAINT** |
| *Plaintiff*, | Case No. |
| - against- | **JURY TRIAL DEMANDED** |
| PANINI AMERICA, INC., | |
| *Defendant*. | |

---------------------------------------------------------------X

Plaintiff NORA VARGAS ("Vargas" or "Plaintiff"), by her attorneys complaining of Defendant PANINI AMERICA, INC. ("Panini" or "Defendant"), alleges as follows:

## INTRODUCTION

1. This Action arises from the policy and practice of Panini (a sports collectibles company) of discriminating against its non-Caucasian employees for numerous years in violation of 42 U.S.C. §1981 ("Section 1981"), by promoting a racially hostile work environment for non-Caucasian employees and deliberately holding back such employees by denying them the same opportunities of advancement as Panini provides to its Caucasian employees.

2. Panini's discriminatory practices are even more insulting due to the fact that Panini relies heavily upon the success of African-American and other non-Caucasian athletes in the sale of Panini's products (75% or more of Panini's business).

3. Vargas, who is Hispanic, clearly was a victim of Panini's discriminatory practices, including being subject to a racially hostile work environment.

## JURISDICTION

1

4. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as the claims alleged herein arise under the laws of the United States, namely Section 1981.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391, because Panini resides in Texas, is subject to the personal jurisdiction of Texas courts, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

6. This Court has personal jurisdiction over Panini because Panini's headquarters are in Texas, and the discriminatory conduct alleged herein took place in Texas. Panini does business in Dallas County, Texas. Its principal place of business is located at 5325 FAA Blvd., Suite 100, Irving, Texas 75061. Panini's contacts with the State of Texas are systematic and continuous, and the acts of discrimination that are the basis for the claims against Panini took place in Dallas County, Texas.

**PARTIES**

7. Plaintiff is an individual residing in Texas and is Hispanic.

8. Panini is a corporation organized and incorporated under the laws of Delaware with a principal place of business in Irving, Texas.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

9. Panini is a company that, among other things, sells trading cards and collectibles using the name and likeness of athletes across the globe.

10. While the backbone of Panini's business centers upon the accomplishments of numerous world-class athletes, most of which are persons of color, it has steadfastly maintained a policy and practice of denying non-Caucasian employees deserved promotions and equal pay as

compared to Caucasian employees, and acquiescing and promoting a racially based hostile work environment for non-Caucasian employees.

11. Furthermore, non-Caucasian employees are noticeably absent from leadership positions at Panini, which only further evidences that Panini has systematically denied career advancement to people of color.

12. Additionally, Panini went to great lengths to physically separate white employees from employees who were people of color. Specifically, Panini had a vast majority of the non-Caucasian employees working in a storage room, while almost all of the white employees worked in normal office space outside of the storage room.

13. Panini management also often labeled non-Caucasian employees as troublemakers who had an "attitude," while never using such derogatory terms when describing white employees.

14. The proof will also show that upper management at Panini was a tight-knit group of white males – the proverbial "good ole boys club," which continuously promoted white employees and kept racial minorities out of management.

15. Notably, Panini also failed to have any discrimination complaint procedures and provided employees with no formal avenues to complain about racial discrimination. Panini also had no anti-discrimination training for employees.

16. In this regard, in May of 2023, the civil rights group Until Freedom and Black Church PAC issued a letter to Panini and the NBA, NFL, MLB, National Women's Soccer League, MLS, and the NHL (the "Open Letter"), which highlighted Panini's discriminatory hiring and employment practices.

17. The Open Letter also demanded that Panini institute employment policies that ensure adequate representation and fair treatment throughout its business structure.

18. Vargas is a Hispanic woman who worked as a Pre-Press Imaging Production Coordinator at Panini from July 2020 to May 2021.

19. After working in that position for eleven months, Vargas applied for the open position of Assistant Soccer Editor in the Photography Department in or about April 2021. At the time of her application to that position, Vargas spoke to the manager of the Photography Department, Chris Wilkins ("Wilkins"), about her application.

20. Wilkins conceded that Vargas was qualified for the position. Indeed, Vargas was qualified for this position, because she had experience assisting the Photography Department that prepared her for the position of Assistant Soccer Editor in that department.

21. However, when she formally applied to that open position, her application was denied and that open position was filled by a Caucasian from outside the company with less experience than Vargas.

22. Such a denial of advancement was due to intentional discrimination. Such discrimination was systematic and pervasive, it detrimentally affected Vargas, and it would have detrimentally affected a reasonable person of Vargas's race under the same circumstances. Such discrimination was part of Panini's overall policy and practice of (a) not promoting racial minorities, and (b) harassing non-Caucasian employees based upon their race. Such discrimination constitutes a continuing violation of Section 1981.

23. But for her race, Vargas would have received the promotion to Assistant Soccer Editor.

24. Vargas also was subjected to a racially hostile work environment. In the Fall of 2020, one of Vargas's supervisors, Robert Greinke ("Greinke"), criticized another Hispanic employee for being distracted by that employee's children. Greinke never criticized Caucasian

employees for being distracted by their children and only criticized such employee for this issue because that employee was Hispanic.

25. Shortly thereafter, Greinke approached Vargas and asked her if she has children and would be similarly distracted by children. Greinke never asked Caucasian employees about having children and being distracted by their children, and only asked Vargas about these issues because she is Hispanic. Greinke assumed she had children and would be distracted because she was Hispanic.

26. Greinke also assigned Vargas an unrealistic amount of work that she could not complete, even if she worked overtime. Greinke did not assign an unrealistic amount of work to Caucasian employees, and only did so with Vargas because she is Hispanic.

27. Greinke also treated Hispanic employees (including Vargas) with far less respect than Caucasian employees, including being overly critical of Hispanic employees while continuously praising Caucasian employees.

28. Furthermore, in 2020 during the COVID-19 pandemic, Panini did not allow Vargas to work from home while it allowed numerous Caucasian employees to work from home. If Vargas were Caucasian, Panini would have permitted her to work from home.

29. But for her race, Vargas would not have suffered such a hostile work environment.

30. In May 2021, after being employed by Panini for numerous months and being denied a promotion due to her race, suffering a racial hostile work environment and witnessing management that was dominated by Caucasians who denied advancement to minorities, Vargas was compelled to quit her job at Panini.

31. Any reasonable person would have felt compelled to resign under the circumstances.

## **FIRST CLAIM FOR RELIEF**

*(Hostile Work Environment in Violation of Section 1981)*

32. Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

33. As set forth in detail above, Defendant discriminated against Vargas and harassed her on the basis of her race (Hispanic).

34. As demonstrated above, the harassment and discrimination suffered by Vargas was intentional and malicious, and it constituted a continuing violation. It was extraordinarily severe and altered the conditions of Vargas's working environment because it created an atmosphere of abuse and intimidation wherein Vargas's own supervisors participated and condoned the racist misconduct, and it led to Vargas's constructive discharge.

35. As described above, Vargas's supervisors used their authority to create and continue the discriminatory abusive working environment and failed to take any appropriate remedial action.

36. As a result, Vargas is entitled to compensatory damages for, *inter alia*, emotional distress, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

37. Because Defendant acted with malice and reckless indifference to Vargas's federally protected rights, Vargas is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

38. Vargas is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

39. But for her race, Vargas would not have suffered such a hostile work environment.

## **SECOND CLAIM FOR RELIEF**
*(Constructive Discharge
in Violation of Section 1981)*

40. Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

41. As set forth in detail above, Defendant discriminated against Vargas, harassed her on the basis of her race, and created a hostile work environment.

42. In May 2021, after being employed by Panini for numerous months and being denied a promotion due to her race, suffering a racial hostile work environment and witnessing management that was dominated by Caucasians who denied advancement to minorities, Vargas was compelled to quit her job at Panini.

43. Any reasonable person would have felt compelled to resign under the circumstances.

44. But for her race, Vargas would not have suffered such a hostile work environment and constructive discharge.

45. As a result, Vargas is entitled to compensatory damages for, *inter alia*, lost wages and income, emotional distress, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

46. Because Defendant acted with malice and reckless indifference to Vargas's federally protected rights, Vargas is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

47. Vargas is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

## **THIRD CLAIM FOR RELIEF**

*(Failure to Promote
in Violation of Section 1981)*

48.  Plaintiff repeats and realleges all of the allegations set forth above as if fully restated in this Paragraph.

49.  As set forth in detail above, Plaintiff is a member of a protected class (Hispanic).

50.  Vargas worked as a Pre-Press Imaging Production Coordinator at Panini from July 2020 to May 2021.

51.  After working in that position for eleven months, Vargas applied for the open position of Assistant Soccer Editor in the Photography Department in or about April 2021. At the time of her application to that position, Vargas spoke to the manager of the Photography Department, Wilkins, about her application.

52.  Wilkins conceded that Vargas was qualified for the position. Indeed, Vargas was qualified for this position, because she had performed the tasks of a Assistant Soccer Editor for months prior to this application.

53.  However, when she formally applied to that open position, her application was denied and that open position was filled by a Caucasian from outside the company with less experience than Vargas.

54.  Such a denial of advancement was due to intentional discrimination. Such discrimination was systematic and pervasive, it detrimentally affected Vargas, and it would have detrimentally affected a reasonable person of Vargas's race under the same circumstances. Such discrimination was part of Panini's overall policy and practice of (a) not promoting racial minorities, and (b) harassing non-Caucasian employees based upon their race. Such discrimination constitutes a continuing violation of Section 1981.

55. But for her race, Vargas would have received the promotion to Assistant Soccer Editor.

56. As a result, Vargas is entitled to compensatory damages for, *inter alia*, lost wages and income, emotional distress, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

57. Because Defendant acted with malice and reckless indifference to Vargas's federally protected rights, Vargas is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

58. Vargas is also entitled to reasonable attorney's fees and expenses to the extent permitted by law.

**WHEREFORE**, Plaintiff demands Judgment as follows:

A.  Plaintiff's actual damages and punitive damages as determined at trial;

B.  Reasonable attorney's fees and expenses;

C.  Costs and disbursements; and

D.  Such other and further relief as deemed just and proper by this Court.

Dated: December 6, 2023

Respectfully submitted,

/s/ Greg McAllister

**GREG McALLISTER**
State Bar No. 24071191
mcallister@roggedunngroup.com

**ROGGE DUNN GROUP, PC**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF**