IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **NORA VARGAS, on behalf of herself and others similarly situated,** § § § | | |
| **Plaintiff,** § § | | |
| v. § § | **Civil Action No. 3:23-cv-02689-B** | |
| **PANINI AMERICA, INC.,** § § § | **JURY TRIAL DEMANDED** | |
| **Defendant.** § § | | |

**REPLY BRIEF
IN SUPPORT OF DEFENDANT'S PARTIAL MOTION TO DISMISS**

After receiving a twenty-eight day extension, Plaintiff filed a Response in Opposition ("Response," Doc. 22) to Defendant's Partial Motion to Dismiss on June 26, 2024. Stunningly, her Response not only fails to rebut the merits of Defendant's Motion, but flagrantly violates FED. R. CIV. P. 11(b)(2). Defendant's Motion to Dismiss should be granted. Additionally, Defendant requests the Court enter an Order requiring Plaintiff's counsel to show cause why the Court should not determine her Response violates Rule 11 for citing and relying on non-existent legal authority, demonstrate how Plaintiff's Response complies with counsel's ethical obligation of candor to the Court, and why the Court should not enter sanctions against Plaintiff's counsel for violating Rule 11 and award Defendant's attorneys' fees incurred in addressing Plaintiff's Response.

### I.   PLAINTIFF'S RESPONSE VIOLATES RULE 11

Plaintiff's Response either cites case law that does not exist or, when it does exist, even a cursory review of the case reveals it does not support the legal proposition cited by Plaintiff. The misrepresentations within Plaintiff's Response are egregious and are not limited to responding to the substantive arguments of Defendant's Motion. Indeed, Plaintiff's Response goes so far as to

invent case law quotations and, in some of those instances of fiction, falsely attributes the invented quotes to the well-known, and often cited, *Ashcroft v. Iqbal*:

> claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). The Supreme Court has emphasized that "a complaint need not contain detailed factual allegations" and that "the ultimate question is whether the complaint states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This principle is further supported by the Fifth Circuit in *Innova Hosp.*

Doc. 22, p. 5 (emphasis added). Plaintiff's quoted language appears nowhere in *Iqbal*. *See generally*, *Iqbal*, 556 U.S. 662 (2009).[1] Plaintiff's Response bears the hallmarks of a filing created with generative artificial intelligence ("AI") without any review of the AI output by counsel.

One Court in this District requires certifications concerning the use of AI in court filings.[2] "But such a rule is not necessary to inform a licensed attorney, who is a member of the bar of this Court, that she must ensure that her submissions to the Court are accurate." *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (referring an attorney to the Second Circuit's Grievance Panel for investigation for submitting a brief that relied on "non-existent" case law generated by ChatGPT).

## II.   NY COUNSEL NOT ADMITTED TO PRACTICE BEFORE THIS COURT

In addition to the false citations, Plaintiff's Response lists, for the first time, the New York law firm of Weinberg Zareh Malkin Price LLP as additional counsel for Plaintiff. See Doc. 22, p. 23 (signature block). No attorney from the Weinberg law firm has filed a notice of appearance, nor is there an indication that any Weinberg attorney is admitted to practice in the Northern District of Texas as required by the Local Rules. *See* LR 83.9.[3]

---

[1] A Westlaw search for the phrase "the ultimate question is whether the complaint states a plausible claim for relief" within all federal cases returns exactly zero results.

[2] *See* Mandatory Certification Regarding Generative Artificial Intelligence (Starr, J.), available at https://www.txnd.uscourts.gov/judge/judge-brantley-starr.

[3] The Weinberg firm filed a similar purported class action lawsuit against Panini earlier this year. *See Dulce Huerta v. Panini America, Inc.*, 3:23-cv-2529-K (N.D. Tex.) (Doc. 7). However, after Panini's counsel served the Weinberg firm with a Rule 11 motion demonstrating the allegations in that lawsuit were demonstrably false, the Weinberg firm voluntarily dismissed that lawsuit.

### III.     DEFENDANT'S MOTION IS EFFECTIVELY UNOPPOSED

As to the "substance" of Plaintiff's Response, Plaintiff fails to put forth any arguments supported by binding legal precedent that defeats Defendant's Motion. Defendant's Motion is effectively unopposed and should be granted in its entirety.

**A.     Fabricated Precedents within Substantive Arguments.**

In addition to errors in the precedent Plaintiff cites regarding Rule 12, Plaintiff cites this Court to a number of non-existent or egregiously misrepresented cases in support of her substantive arguments. Defendant could dedicate many additional pages of briefing detailing all of the ways the "cases" and "authority" within Plaintiff's Response are fictitious but, by way of example, points the Court to just a few examples of how Plaintiff's Response violates Rule 11.

Plaintiff relies upon a case purportedly styled *Bradshaw v. Unity Marine Corp.*, No. 3:19-CV-00356-E, 2020 WL 6345744 (S.D. Tex. 2020) claiming former employees have standing to seek injunctive relief against a former employer. Doc. 22, p 20 ("In *Bradshaw*, the court acknowledged the standing of former employees to seek injunctive relief when discriminatory practices had continuing effects on current employees.") *Bradshaw* does not exist as cited.[4] The Westlaw citation given (2020 WL 6345744) is not associated with any case. The case number (3:19-CV-00356) is associated with a case, but that case is workplace injury case styled *Coleman v. Arena Energy, LP,* that does not involve class claims nor claims of racial discrimination.[5]

Plaintiff also purports to analyze Fifth Circuit law concerning certification of failure to

---

[4] Panini has been able to locate one case in the Fifth Circuit captioned *Bradshaw v. Unity Marine Corp.* and it deals with a single employee's personal injury claim under the Jones Act. Ironically, the *Bradshaw* court observed it was "almost as if Plaintiff's counsel chose the opinion by throwing long range darts at the Federal Reporter (remarkably enough hitting a nonexistent volume!)" and hoped "the Court would be so charmed by their child-like efforts that their utter dearth of legal authorities in their briefing would go unnoticed." *Bradshaw*, 147 F. Supp. 2d 668, 670 & 671 (S.D. Tex. 2001). This appears to be what has happened here, but with an AI generated dartboard, and the "daunting task of deciphering" Plaintiff's submission left to both Defendant's counsel and the Court. *Id*. at 670.

[5] Cause No. 3:19-cv-00356, in the United States District Court for the Southern District of Texas, Galveston Division.

3

promote classes, discussing two cases where certification was purportedly granted or upheld:

> In *Johnson v. PRIDE Industries, Inc.*, 7 F.4th 391 (5th Cir. 2021), **the court upheld a class claim** where the failure to promote was part of a broader patter of discriminatory practices. The court recognized that system issues, such as discriminatory promotion policies, could form the basis for a class action if they similarly affected a significant number of employees. In *Mims v. Carrier Corp.*, 88 F. Supp. 3d 727 (E.D. Tex. 2015), **the court certified a class action** where the company's promotion policies systematically disadvantaged non-Caucasian employees. The court emphasized that commonality and typicality were met because the discriminatory practices affected all class members in a similar way.

Doc. 22, pp. 18-19 (emphasis added). *Johnson* and *Mims* are not class action cases and neither discusses class certification. *See Johnson*, 7 F.4th 391 (5th Cir. 2021) and *Mims*, 88 F.Supp. 2d 706 (E.D. Tex. 2000). Further, the *Mims* case does not exist as cited—88 F. Supp. 3d 727 (Plaintiff's citation) is not associated with any case.[6] Panini's counsel has only been able to locate one case in the Fifth Circuit captioned *Mims v. Carrier Corp*.[7] That case involved neither class claims, nor claims of racial discrimination, and was decided in 2000, not 2015.

Elsewhere, Plaintiff relies on a case called *Dobbins v. Federal Reserve Bank of Dallas* (but failing to provide a case citation). Plaintiff claims the *Dobbins* court "considered the totality of the circumstances to find allegations of a hostile work environment sufficient based on a series of discriminatory incidents that collectively created an abusive environment." Doc. 22, pp 12-13. Panini's counsel has been able to locate one case in the Fifth Circuit captioned *Dobbins v. Federal Reserve Bank of Dallas*.[8] But *Dobbins* was an Americans with Disabilities Act case that had nothing to do with allegations of a hostile work environment. 2020 WL 9071686 at *1.

---

[6] Plaintiff sometimes cites *Mims* as a Louisiana case (pages 2 and 22), and other times cites as a Texas case (page 18). In each instance, Plaintiff cites *Mims* as published in the Third Volume of the Federal Supplement (not the Second Volume, where a case captioned *Mims v. Carrier Corp*. actually appears). And Plaintiff inconsistently cites *Mims* as appearing on either page 656, or page 727, of that Volume.
[7] *Mims v. Carrier Corp.*, 88 F.Supp. 2d 706 (E.D. Tex. 2000).
[8] 2020 WL 9071686 (N.D. Tex. 2020).

As a NY District court faced a similar issue recently noted, "[m]any harms flow from the submission of fake opinions." *Mata v. Avianca, Inc.*, No. 22-cv-1461, 2023 WL 4114965, at *1 (S.D.N.Y. June 22, 2023) (imposing sanctions when counsel "submitted non-existent judicial opinions with fake quotes and citations created by the artificial intelligence tool ChatGPT").

## IV.   THE COURT SHOULD DISMISS PLAINTIFF'S CLASS CLAIMS

Turning to Plaintiff's substantive Response, Plaintiff's arguments and "authority" as to her class and individual claims carry no weight and fail to defeat Defendant's Motion. The Court should grant Defendant's Motion to Dismiss and enter an order dismissing Plaintiff's class action allegations under Rule 23(b)(2) and (b)(3).[9] To certify a class under Rule 23, a plaintiff must show that the proposed class meets all the requirements of Rule 23(a) and the requirements of at least one category of classes listed under Rule 23(b). "The different types of class actions [under Rule 23(b)] are categorized according to the nature or effect of the relief being sought." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 412 (5th Cir. 1998).

Plaintiff seeks to certify this class under Federal Rules of Civil Procedure 23(b)(2) and/or (b)(3). As a former employee, Plaintiff Vargas lacks standing to pursue injunctive or declaratory relief under Fed. R. Civ. P. 23(b)(2). *Wal-Mart Stores,* 564 U.S. at 365. Under binding Fifth Circuit precedent, Plaintiff's Section 1981 claim for intentional discrimination cannot be certified as a class under Fed. R. Civ. P. 23(b)(3). *Allison*, 151 F.3d at 419; *see also Lindsley v. Omni Hotels Mgmt. Corp.*, No. 2019 WL 2743892, at *14 (N.D. Tex. July 1, 2019) (Boyle, J.).

---

[9] "District courts are permitted to make such determinations on the pleadings and before discovery is complete when it is apparent from the complaint that a class action cannot be maintained." *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (affirming motion to strike class allegations filed under Rules 12(f) and 23(d)). The Fifth Circuit has long held it may be appropriate to deny class certification on the pleadings alone. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.").

**A.      Plaintiff Lacks Standing Under Rule 23(b)(2).**

Plaintiff (as a former employee) lacks standing to seek injunctive or declaratory relief for a discrimination claim under Rule 23(b)(2). *See* Doc. 17, p. 15 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 365 (2011)). In response this argument, Plaintiff relies on *Bradshaw* for the proposition that "former employees have standing to seek injunctive [sic] when the relief sought addresses ongoing and systemic discriminatory practices affecting a class." Doc. 22, p. 20 (citing *Bradshaw v. Unity Marine Corp.*, 2020 WL 6345744 (S.D. Tex. 2020)). As explained *supra*, Plaintiff's *Bradshaw* case seems not to exist. The only *Bradshaw* opinion Panini has been able to locate was a personal injury case dismissed on limitations grounds.[10]

Plaintiff cites no legal authority indicating the Supreme Court has overruled its key holding in *Wal-Mart* that former employees (like Plaintiff) lack standing under Rule 23(b)(2).[11] Because Plaintiff failed to address this argument in any meaningful way, and *Wal-Mart* is still good law, the Court should dismiss all class claims brought under Rule 23(b)(2).

**B.      *Allison* Forecloses Certification Under Rule 23(b)(3).**

Fifth Circuit precedent forecloses Plaintiff's class claims for individual monetary relief under Rule 23(b)(3). *See* Doc. 17, p. 16 (citing *Allison*, 151 F.3d at 418). Plaintiff responds by pointing the Court to *Mims v. Carrier,* 88 F. Supp. 3d 656 (E.D. La. 2015), where the court there allegedly "allowed individual claims for back pay and other monetary relief within a class action framework, provided the common issues of the class remained the central focus." Doc. 22, p. 22. Plaintiff's version of *Mims* is another case that seems not to exist.

---

[10] 147 F. Supp. 2d 668 (S.D. Tex. 2001).
[11] Plaintiff cites a 1977 case under the heading "Precedent Supporting Class Claims." Doc. 22, p. 21 (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). But I*nt'l Brotherhood* was decided thirty-four years <u>before</u> *Wal-Mart*, and adds nothing to this Court's analysis.

6

Plaintiff also cites *Allison* (without any pinpoint) for a similar proposition as that from the non-existent *Mims*, claiming *Allison* also provides "individual monetary relief can be sought within the framework of a class action, provided it does not predominate over the common issues of the class." Doc. 22, pp. 2, 22. This is a gross distortion of *Allison*, which, as Defendant's Brief explains, effectively foreclosed class certification for workplace discrimination claims under Rule 23(b)(3).[12] In *Allison*, the Fifth Circuit reviewed the use of class actions concerning "widespread or institutional-scale discrimination" in the employment context, for both disparate impact and pattern or practice claims of intentional discrimination. *Allison*, 151 F.3d at 409. The Court noted Section 1981 claims fundamentally alter the class action analysis because claims for compensatory and punitive damages increase the "complexity and diversity of the issues to be tried." *Id.* at 410.[13]

The *Allison* court denied certification under Rule 23(b)(3) because the individual determinations necessary for compensatory and punitive damages meant that (1) class issues do not predominate, and (2) class treatment is not a superior method for resolving discrimination claims. *Id.* at 419 ("The predominance of individual-specific issues relating to the plaintiff's claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claims."). The *Allison* court ultimately rejected any argument about "overarching issues" of "plant-wide racially discriminatory practices" because the argument "fails to appreciate the overwhelming number of individual-specific issues." *Id.* at 420 ("The success of these claims will turn ultimately on the special circumstances of each individuals' case."). *Allison*

---

[12] *See Lindsley v. Omni Hotels Mgmt. Corp.*, 2019 WL 2743892, at *14 ("few employment discrimination class actions have been certified in the Fifth Circuit" post-*Allison*, and "it seems that most employment discrimination classes that are certified are done so under Rule 23(b)(2) [not Rule 23(b)(3)], where final injunctive or declaratory relief is requested.").

[13] Although *Allison* held that plaintiffs could potentially recover "incidental" monetary relief under a properly certified 23(b)(2) class, the Supreme Court called even this ruling into question in *Wal-Mart*. 564 U.S. at 367 (questioning whether any form of monetary relief could be recovered by a 23(b)(2) class, and specifically rejecting class certification where plaintiffs seek individual monetary relief such as backpay or front pay).

does not support Plaintiff's argument; it requires dismissal under Rule 23(b)(3).

## V. THE COURT SHOULD DISMISS PLAINTIFF'S INDIVIDUAL CLAIMS

### A. Plaintiff Does Not Respond as to Disparate Impact Claim.

Panini moved to dismiss Plaintiff's Section 1981 disparate impact claim because disparate impact is only viable under Title VII. Doc. 17, pp. 12-13. Plaintiff fails to address this basis for dismissal and, because Defendant's Motion on this issue is well-supported and was unrebutted by Plaintiff, the Court should dismiss Plaintiff's Section 1981 disparate impact claim.[14]

### B. No Viable Hostile Work Environment or Constructive Discharge Claims.

Panini's Brief explains why the allegations in Plaintiff's Amended Complaint, even if taken as true, do not meet the "objectively offensive behavior" standard required to state a hostile work environment claim. Doc. 17, pp. 8-9. Similarly, Panini's Brief explains how Plaintiff fails to plead facts supporting a constructive discharge claim, which requires allegations of even "greater severity or pervasiveness" than are required for a hostile work environment claim. Doc. 17, p. 10.

Plaintiff responds by making brand new allegations concerning some sort of "barrier chain in the workspace of a black employee." Doc. 22, pp. 4, 6, 10, 11, 13. Plaintiff does not mention the alleged "barrier chain" anywhere in her Amended Complaint and, as the Court well knows, Plaintiff cannot rely on allegations not contained within her Complaint to avoid dismissal. *Edwards v. Burwell*, 2015 WL 4131616, *2 (N.D. Tex. July 8, 2015) (Boyle, J.) ("The court will 'not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts.'") Even if she could, as a Hispanic woman (Doc. 9, ¶4), Plaintiff cannot rely on an alleged example of harassment directed toward an African-American employee to support her

---

[14] Plaintiff's Response purports to rebut arguments never raised in Panini's Motion. For example, Plaintiff acknowledges that Panini's Motion "does not challenge Vargas's failure to promote claim" (pg. 1), but then devotes three pages of her Response (pgs. 6-9) to defending that claim. Plaintiff also purports to defend claims of gender and sex discrimination, which were never alleged in her Complaint.

claim. *Hernandez v. Yellow Transp., Inc.*, 679 F.3d 644, 653-54 (5th Cir. 2012) (affirming that "examples of harassment towards African-American employees could not support the claim that there was a hostile work environment for Hispanic employees.").[15] Plaintiff's Response amounts to nothing more than the unsupported assertion that Vargas "worked in a hostile work environment because she worked in a hostile work environment."

Plaintiff also purports to rely on *Brown* and *Keelan* as examples of cases where the Fifth Circuit has "recognized a constructive discharge claim based on intolerable working conditions, even where no specific demotion of reduction in work occurred because the cumulative effect of the unbearable conditions could establish a constructive discharge claim."[16] The Fifth Circuit did no such thing in either case. To the contrary, the Fifth Circuit affirmed summary judgment dismissing constructive discharge claims in both cases. *Brown*, 207 F.3d at 783 ("[W]e cannot conclude that Brown's working conditions were so intolerable that a reasonable employee would have felt compelled to resign."); *Keelan*, 407 F. 3d at 342-43 ("[W]e agree with the district court that [the plaintiff] did not meet his burden of showing constructive discharge" and finding "none of [the complained of] working conditions constitutes a 'greater degree of harassment than that required by a hostile environment claim.'"). Plaintiff confusingly argues that her "experiences align with the circumstances in *Keelan*" (where the plaintiff's constructive discharge claim failed). Doc. 22, p. 14. Plaintiff's claim fails in this case, just as it failed in *Keelan*.

Plaintiff's hostile work environment and constructive discharge claims must be dismissed.

---

[15] Plaintiff claims she was "criticized for her attire," citing ¶ 30 of her Amended Complaint. Doc. 22, p. 9. But ¶ 30 makes no mention of this, and Panini could find no such reference anywhere in the Amended Complaint. Doc. 9.
[16] Doc. 22, p. 19 (citing *Brown v. Bunge Corp.*, 207 F.3d 776 (5th Cir. 2000) and *Keelan v. Majesco Software, Inc.*, 407 F. 3d 332 (5th Cir. 2005)).

9

**C.     The Court Should Dismiss Plaintiff's Retaliation Claim.**

Plaintiff's Amended Complaint fails to allege any facts supporting she engaged in protected activity in the first place, much less pleading a connection between that alleged protected activity and any adverse action, and thus fails to state a retaliation claim. *See* Doc. 17, p. 11. Plaintiff points the Court to paragraphs 27 and 30 of the Amended Complaint in support of her argument that she did in fact plead engagement in protected activity. Doc. 22, p. 16. Neither paragraph asserts facts that have *anything* to do with alleged complaints Vargas made during her employment, much less facts akin to protected activity. Doc. 9, ¶¶ 27 & 30. After pointing the Court to these two irrelevant paragraphs, Plaintiff summarily concludes her Amended Complaint asserts facts supporting a causal connection sufficient to state a retaliation claim because "the timing and context of events support the causal connection between Vargas' protected activity and the adverse actions." Doc. 22, p 17. But, this conclusion is based on the flawed premise that Plaintiff pleads facts supporting protected activity. She does not, and her Response fails to identify any facts showing she suffered any retaliation in response to alleged complaints – or that any specific act of discrimination occurred after she allegedly engaged in protected activity. Conclusory allegations of retaliation (without supporting facts) do not support a cause of action.

## VI.    CONCLUSION

Defendant requests the Court grant its Motion to Dismiss, enter an Order requiring Plaintiff's counsel to show cause why the Court should not find the Response violates Rule 11 because it relies on non-existent legal authority, and order any appropriate additional relief to Defendant it deems Defendant to be entitled to, including but not limited to an award of attorneys' fees incurred in connection with responding to Plaintiff's brief.[17]

---

[17] Defendant's counsel are prepared to provide information regarding fees incurred in responding to Plaintiff's Brief.

Date: July 10, 2024

        Respectfully submitted,

        **GORDON REES SCULLY MANSUKHANI, LLP**

        */s/ Megan M. Mitchell*
        **Laura E. De Santos, LEAD COUNSEL**
        Texas Bar No. 00793612
        ldesantos@grsm.com
        **Megan M. Mitchell**
        Texas Bar No. 24073504
        mmmitchell@grsm.com
        **Hayley D. Friedman**
        Texas Bar No. 24123253
        hfriedman@grsm.com
        1900 West Loop South, Suite 1000
        Houston, Texas 77027
        Telephone: (713) 961-3366
        Facsimile: (713) 961-3938

        **Soña Garcia**
        Texas Bar No. 24045917
        sjgarcia@grsm.com
        2200 Ross Avenue, Suite 3700
        Dallas, Texas 75201
        Telephone: (214) 231-4660
        Facsimile: (214) 461-4053

        **LOCKE LORD LLP**

        **Robin G. Shaughnessy**
        Texas State Bar No. 24012713
        rshaughnessy@lockelord.com
        **Aaron S. Nava**
        Texas State Bar No. 24134375
        aaron.nava@lockelord.com
        2200 Ross Avenue, Suite 2800
        Dallas, Texas 75201
        Telephone: (214) 740-8000
        Facsimile: (214) 740-8800

        **David M. Gregory**
        Texas State Bar No. 24007274
        dgregory@lockelord.com
        2800 JPMorgan Chase Tower
        600 Travis Street

        Houston, Texas 77002  
        Telephone: (713) 226-1200  
        Facsimile: (713) 223-3717

        **ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

   I hereby certify that on July 10, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will automatically send notification of such filing to counsel(s) and parties of record.

Rogge Dunn
Earl S. Nesbitt
Lane M. Webster
ROGGE DUNN GROUP, PC
500 N. Akard Street, Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile: (214) 220-3833
Email: dunn@trialtested.com
   nesbitt@roggedunngroup.com
   webster@roggedunngroup.com

**ATTORNEYS FOR PLAINTIFF**

            */s/ Megan M. Mitchell*
            **Megan M. Mitchell**