IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NORA VARGAS, on behalf of herself and others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:23-CV-02689-B |
| PANINI AMERICA, INC., | § § § | |
| Defendant. | § | |

## ORDER

The Court held a hearing on August 28, 2024, to address the Order to Show Cause issued on July 19, 2024 (Doc. 25). Plaintiff is represented by Rogge Dunn Group ("RDG"), based in Dallas, and Weinberg Zareh Malkin Price LLP ("WZMP"), based in New York City (collectively, "Plaintiff's Counsel"). During the hearing, the Court gave Plaintiff's Counsel the opportunity to address their misstatements of law and misrepresentations of cases in their Response to the Motion to Dismiss ("Response"). *See generally* Doc. 22.

On July 19, 2024, the Court ordered Plaintiff's Counsel to show cause in writing "why they should not be sanctioned for violating Federal Rule of Civil Procedure 11 and Texas Disciplinary Rule of Professional Conduct 3.03" because of the misrepresentations in the Response. Doc. 25, OSC, 3. Plaintiff's Counsel previously chalked up the miscited law and unsupported legal propositions to "mistakes, . . . a lack of familiarity amongst counsel, siloed research and knowledge, and poor integration of the work product of multiple attorneys." Doc. 24, Ltr., 2. Such explanations

might explain the typos and misquoted law in the Response but they do not adequately explain the misstated legal principles and incongruous citations.[1]

In their response to the Order to Show Cause, the "reviewing" attorneys—Mr. Nesbitt and Mr. Zareh—admitted they did not review or "verify each of the cited cases" in the Response. Doc. 35, OSC Resp., 8. But Plaintiff's Counsel still did not explain how their drafting process led to cite their unsupported legal propositions and false case citations they did. Therefore, the Court set a hearing to address the show cause Order. Doc 40, Order.

A red flag to the Court that this Response's errors stem from use of artificial intelligence ("AI") is the type and trend of error. Besides typos and misquoting cases, the Response either misstates case holdings, a court's findings, or legal principles in at least ten cases. For example, the Response cites to *Johnson v. PRIDE Industries*—a case that has *nothing* to do with a class action—for the proposition that it upheld a class claim. Doc. 22, Resp., 18. Worse, the Court found that ChatGPT, an AI search engine, described *Johnson v. PRIDE Industries*, as cited by Plaintiff,[2] in the same erroneous manner that the Response describes it. When confronted with the Court's findings on ChatGPT, Plaintiff's lead New York counsel, who attested to playing a central role in the drafting process, could not provide any further explanation.

Some of the misstated cases serve as the only support for Plaintiff's contention in the Response. For example, *Bradshaw v. Unity Marine Corporation* is the only case the Response cites to

---

[1] After being ordered to confirm all "authorities cited that do not stand for the legal or factual proposition offered," Doc. 25, OSC, 3, Plaintiff's Counsel did not catch every error. For instance, they never raise *EEOC v. W&M Enterprises Inc.*, which the Response describes as having sufficient allegations for a hostile work environment claim. Doc. 22, Resp., 13 (citing 496 F.3d 393 (5th Cir. 2007)). But the Fifth Circuit was not reviewing the sufficiency of the allegations in *W&M Enterprises*; it was reviewing a summary judgment motion. A review of *W&M Enterprises*'s docket (4:04-cv-03372) shows there was never a motion to dismiss, addressing the sufficiency of allegations, ever filed in this case.

[2] The Response miscites this case as *Johnson v. PRIDE Industries*, 7 F.4th 391 (5th Cir. 2021).

support the Plaintiff's contention regarding standing for injunctive relief and declaratory judgment in a class action. *See* Doc. 22, Resp., 20. Contrary to the Response's description, *Bradshaw* is not a class action and it never discussed standing or either form of relief. The Westlaw reporter "2020 WL 6345744," which the Response cites for *Bradshaw*, also does not exist. Plaintiff's Counsel repeatedly characterized these kinds of the mistakes to their failure to *review* the final briefing, without providing any real explanation for how the misstated and miscited law was *drafted* into the Response in the first place.

Another case from the Response, *Mims v. Carrier Corporation*, is not only inapplicable to the proposition cited but Plaintiff's counsel cites to the wrong legal reporter, the wrong district court, and the wrong year when attempting to cite this case. Doc. 22, Resp., 2, 18, 22. In other instances, the Response asserts that the Fifth Circuit found a certain claim to be sufficient, but then goes on to cite cases that *dismissed* the claims in question. *See id.* 11–14, Neither in their written responses nor at the hearing could Plaintiff's Counsel explain how exactly such phenomena occurred in the Response.

The hearing presented the third opportunity for Plaintiff's Counsel to explain the magnitude of errors in the Response. But their testimony only confirmed that Plaintiff's Counsel has no other explanation for how the wrong case law or case cites were drafted into their brief. Mr. Nesbitt and Mr. Zareh[3] admitted they never reviewed the cases in question. Despite being unable to explain how the cases were drafted into the Response, they were emphatic no AI was used.

Attorney William Pham from WZMP testified that he drafted a significant part of the

---

[3] Mr. Zareh also testified that the Dallas-based lawyers, including Mr. Webster, did not review all the cases cited in the Response.

Response.[4] While it did not find credible Mr. Pham's denial of AI use, the Court pushed him to explain how else the foregoing cases made their way into the Response. Mr. Pham stated that these errors come from a "grid" of cases, which he kept that was apparently bungled as he began funneling his legal research and deleting some cases. Mr. Pham did not explain how his deletion of cases from this grid could lead to the sorts of mistakes illustrated above: citing to a case reporter that does not exist, having a citation sentence that is incorrect in three distinct respects, and claiming, in multiple instances, a case stands for a proposition that is nowhere in the case cited. Nor can the Court surmise how the introduction of cases like *Bradshaw* and *Mims* can be explained by a botched case grid.

"District courts have an independent duty to maintain the integrity of the judicial process and may impose Rule 11 sanctions where necessary . . . ." *Whitehead v. Food Max of Miss., Inc.*, 332 F.3d 796, 808 (5th Cir. 2003). A court may *sua sponte* order sanctions, such as a public reprimand, under Federal Rule of Civil Procedure 11(c)(3) after issuing "an order to show cause why the conduct described in the order has not violated Rule 11(b)." Rule 11(b) provides in relevant part:

> (b) Representations to Court. **By presenting to the court** (whether by signing, filing, submitting, or later advocating) a pleading, **written motion,** or other paper, an **attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable** under the circumstances,—
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) **the claims, defenses, and other legal contentions therein are warranted by existing law** or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

FED. R. CIV. P. 11(b) (emphasis added).

---

[4] Another troubling discovery during this hearing is that Mr. Pham admits to drafting a significant portion of the Response without having signed the Response or having applied *pro hac vice* to practice before this Court at the time the Response was filed.

The Fifth Circuit has interpreted Rule 11 as imposing an affirmative duty on an attorney to certify that he has conducted a reasonable inquiry such that the filing presented embodies "existing legal principles." *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1023–24 (5th Cir. 1994); *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). Compliance with this duty is measured when the attorney signs or files the document. *Childs*, 29 F.3d at 1024. The purpose of the rule is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

In keeping with the plain text of Rule 11, the Fifth Circuit has found that factual or legal misrepresentations may serve as the basis for sanctions. *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 265 (5th Cir. 2007) (citing *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1357 (Fed. Cir. 2003) (affirming a sanction for miscitation and mischaracterization of authority "because, in quoting from and citing published opinions, [counsel] distorted what the opinions stated by leaving out significant portions of the citation")). "Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Id.* (citation omitted).  In *Jenkins*, the Fifth Circuit also said "an admonition by the court may be an appropriate sanction, in instances where the attorney's sanctionable conduct was not intentional or malicious, where it constituted a first offense, and where the attorney had already recognized and apologized for his actions." *Id.* (finding district court did not abuse its discretion when imposing a public reprimand sanction).

Plaintiff's Counsel signed and therefore certified that the Response provided sound legal principles, when the Response did not in fact do so. They have apologized and acknowledged the Response contains bad law. But they have never addressed the elephant in the room: how the false

citations and statements of law made their way into the Response. After providing Plaintiff's Counsel ample opportunity to provide any legitimate explanation for the drafting itself, in the face of a brief that can only otherwise be explained by AI, they could not provide one.

The Court concludes that the Response was drafted using AI without subsequent review by Plaintiff's Counsel. The Court **REPRIMANDS** Plaintiff's Counsel,[5] which is the sanction the Court deems necessary to deter them and others practicing before this Court from using AI without making a reasonable inquiry that the "legal contentions [in their filings] are warranted by existing law." FED. R. CIV. P. 11(b); *accord Jenkins*, 478 F.3d at 265.

Separately, having reviewed the merits of pleading and motion to dismiss briefing, putting aside the erroneous case law cited in the Response, the Court finds that Plaintiff has failed to sufficiently plead her individual and class claims. The Court **DISMISSES WITHOUT PREJUDICE** the Amended Complaint. Plaintiff may file an amended complaint within **forty-five (45) days** of this Order.

**SO ORDERED.**

**SIGNED: August 30, 2024.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[5] For the purposes of the sanction, "Plaintiff's Counsel" is comprised of Mr. Earl S. Nesbitt, Mr. Omid Zareh, Mr. Lane M. Webster, and Mr. William Pham. The Court does not include other counsel representing Plaintiff, Mr. Rogge Dunn and Mr. John T. Fant, who signed the Response but apparently did not work on it at all. Former counsel Mr. Pennetti also is not included in this sanction.